IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


**RALPH E. HULSEY**                                                                    **PLAINTIFF**

            VS.                            Civil No. 2:17-cv-02206-MEF

**NANCY A. BERRYHILL, Commissioner,**                                  **DEFENDANT**
**Social Security Administration**


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Ralph E. Hulsey, brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying his claim for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") under the provisions of Titles II and XVI of the Social Security Act (the "Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405 (g).

### I.    Procedural Background

Plaintiff filed his applications for SSI and DIB on January 29, 2015, due to coronary artery disease and triple bypass surgery. (ECF No. 8, pp. 13, 164). Plaintiff initially alleged an onset date of January 21, 2014. (*Id*.). At the administrative hearing, Plaintiff amended his alleged disability onset date to April 13, 2013. (*Id*., pp. 13, 51). His claims were denied initially on April 3, 2015, and upon reconsideration on July 17, 2015. (*Id*., pp. 13, 92, 96). An administrative hearing was held on January 21, 2016, before the Hon. Harold D. Davis. (*Id*., p. 26). Plaintiff

appeared in person and was represented by counsel, Davis Moody. (*Id*.). Vocational Expert Monte Lumpkin also testified at the hearing. (*Id*.).

By written decision dated August 25, 2016, the ALJ found Plaintiff's hypertension, coronary artery disease, and obesity to be severe, but found that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments. (*Id*., p. 16). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (*Id*.).

With the assistance of a vocational expert ("VE"), the ALJ then determined Plaintiff would be unable to perform any past relevant work (*Id*., p. 19); however, the ALJ found Plaintiff could perform the requirements of the representative occupations of: Shipping Checker (DOT No. 222.687-030), with 15,596 jobs in the national economy; Power Screwdriver Operator (DOT No. 699.685-026), with 53,015 jobs in the national economy; or, Can Filling and Closing Machine Tender (DOT No. 529.685-282), with 25,192 jobs in the national economy. (*Id*., p. 20). The ALJ found Plaintiff had not been disabled under the definition of the Act from April 13, 2013, through the date of his decision. (*Id*.).

On September 6, 2017, the Appeals Council denied Plaintiff's request for review. (*Id*., pp. 1-6). Plaintiff then filed this action. (ECF No. 1). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs. (ECF Nos. 11, 12). The case is ready for decision.

## II.   Relevant Evidence

The undersigned has conducted a thorough review of the entire record in this case. The complete sets of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

At the administrative hearing, Plaintiff testified that he was 53 years old and had a 12th

grade education. (ECF No. 8, pp. 32-33). Plaintiff testified that his last job was with Cloyes Gear Company, and that job ended because he really could not do it. (*Id.*, p. 34). Plaintiff testified he worked there for two and a half months running a turning bar machine, but he was still in his preliminary 90-day period and was missing too much time. (*Id.*, pp. 34-35). Plaintiff reported that he had worked for Walmart as a dock worker unloading trucks for 12 years; he left because his work was deteriorating, and he had been written up and terminated. (*Id.*, pp. 35-36).

Plaintiff testified that he had a lot of pain in his hands, feet, ankles, and chest, and that he had swelling and angina. (*Id.*, p. 36). The last time he had been in the hospital was in 2012 or 2013. (*Id.*, p. 39). Plaintiff stated that he did not cook, clean, mow the lawn, or go to the grocery store. (*Id.*, p. 46). He could walk a quarter of a mile with rest periods, but he could not make it a full mile. (*Id.*, p. 47). When he tried to drive he had pain in his legs and hands, as well as in his back, and this prevented him from driving more than 10 miles. (*Id.*, pp. 53-54). He only drove every two to three months. (*Id.*). Plaintiff also testified that his medications made him tired and dizzy and that he had fallen twice. (*Id.*, p. 55).

The medical evidence of record reflects the following:

On October 12, 2012, Plaintiff underwent left heart catheterization, selective coronary angiography, left ventriculography with left internal mammary artery injections and vein graft injections, percutaneous transluminal angioplasty and stenting of the right coronary artery with drug-eluting stent to treat his unstable angina. (*Id.*, p. 321). Post-operatively Plaintiff was advised to limit himself to light activity for five to seven days and to avoid lifting greater than 10 pounds. (*Id.*, p. 326).

On January 17, 2013, Plaintiff was seen by Dr. David Churchill for a follow-up visit. (*Id.*, p. 232). Plaintiff's chief complaints were listed as hyperlipidemia, hypertension, coronary artery disease, and atrial fibrillation. (*Id.*). Plaintiff denied chest pain, dyspnea, dyspnea on exertion, syncope, palpitations, bilateral lower extremity edema, and lightheadedness. (*Id.*). Plaintiff also

reported compliance with his recommended diet, exercise and medication, and that he was no longer using tobacco. (*Id*.). Dr. Churchill diagnosed Plaintiff with: angina pectoris, coronary artery disease, percutaneous transluminal coronary angioplasty, hyperlipidemia, and benign essential hypertension. (*Id*.).

On August 12, 2013, Plaintiff saw Dr. Churchill again, this time with the additional complaints of shortness of breath, dizziness, and edema. (*Id*., p. 236). Plaintiff denied any problems, but he felt short of breath with exertion (worse with heat/humidity) which had worsened over six months. (*Id*.).

On May 22, 2014, Plaintiff saw Dr. Churchill for a nine-month follow-up visit. (*Id*., p. 241). Dr. Churchill noted Plaintiff had been stable overall and had no current complaints. (*Id*.). Dr. Churchill noted, however, Plaintiff's report that he would get short of breath with humid weather, had low energy levels, slept poorly, and had night sweats. (*Id*.).

On March 12, 2015, Plaintiff returned to Dr. Churchill for a 10-month follow-up visit. (*Id*., p. 246). Dr. Churchill noted Plaintiff was stable overall, but he had more leg pain and swelling on the right side from when he had a vein removed and his blood pressure had increased. (*Id*.). Dr. Churchill performed a physical examination and described Plaintiff's appearance as well-nourished, well-developed patient in no acute distress who ambulates without difficulty. (*Id*., p. 305). Dr. Churchill noted no abnormal results from this exam beyond mild edema of Plaintiff's right leg. (*Id*., p. 305-306).

On December 18, 2015, Dr. Churchill completed a Cardiac Medical Source Statement form. (*Id*., p. 300). Dr. Churchill circled numbers to indicate Plaintiff could sit for eight hours, stand for four hours, and walk for four hours of an eight-hour workday. (*Id*.). Dr. Churchill opined Plaintiff would require the ability to shift positions at will between sitting, standing and walking, but he would not need unscheduled breaks or to elevate his legs above heart level when sitting. (*Id*., pp. 300-301). Dr. Churchill marked boxes indicating Plaintiff could lift and carry

up to 20 pounds frequently, up to 25 pounds occasionally, and over 25 pounds rarely. (*Id.*, p. 301). Dr. Churchill also checked boxes indicating Plaintiff would not require any environmental restrictions. (*Id.*). Dr. Churchill opined Plaintiff would be capable of low stress work; would be off task 15% of each day; and, he would be absent from work an average of two days per month, as well as missing at least two hours of work two days per month. (*Id.*, p. 302).

## I. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least 12 consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if she reaches the final stage does the fact-finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## II. Discussion

Plaintiff raises the following issues: (1) whether the ALJ erred in the RFC determination, and (2) whether the ALJ erred in his findings at step five. (ECF No. 11, pp. 6-10).

### A. RFC Determination

Plaintiff contends the ALJ erred in finding Plaintiff able to perform light work, and that the ALJ improperly evaluated the medical source statement from Dr. Churchill. (*Id.*, pp. 7-9).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p. It is assessed using all relevant

evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614, 619 (8th Cir. 2007) (citing *Lauer v. Apfel*, 245 F.3d at 704); *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 404.1546, 416.927(d)(2), 416.946.

The ALJ considered the Plaintiff's testimony, disability reports, treatment records, and medical opinion evidence in making his RFC determination. The ALJ first considered the Plaintiff's testimony concerning his pain and functional limitations. Plaintiff testified he had angina pain and swelling in his chest, as well as swelling and numbness in his legs and feet. (ECF No. 8, pp. 17, 36). He also testified that he had bypass surgery in April 2010 while working at Walmart, and that he had significant pain when doing things after his surgery but continued to work at Walmart until April 2013. (Id.). Plaintiff also testified that he is up and down all day, lies down eight to 10 hours per day and sits five to eight hours a day. (*Id.*). The ALJ noted that while Plaintiff alleged significant edema, the medical records only documented it when he ran out

7

of his blood pressure medication and, even then, it was diagnosed as mild edema.  (*Id.*, p. 17). The ALJ also noted that Plaintiff's reports to Dr. Churchill, as reflected in treatment notes, did not include significant reports of pain and swelling.  (*Id.*, pp. 17-18).  The ALJ found these reports of symptoms not entirely consistent with the medical evidence and other evidence in the record. (*Id.*, p. 17).

The ALJ carefully considered the totality of the Plaintiff's treatment records, opinion evidence from treating cardiologist Dr. Churchill, and opinion evidence from non-examining medical consultants.  (*Id.*, pp. 16-19).  The ALJ noted Plaintiff had multiple surgeries performed on his cardiovascular system between September 8, 2003 and October 12, 2012.  (*Id.*, p. 17).  He also noted, however, there was no evidence that Plaintiff had required surgery since then, and treatment records showed plaintiff had done relatively well since that time.  (*Id.*).  The ALJ examined Dr. Churchill's treatment records from 2013 through 2015 and noted that Plaintiff's physical examinations were largely normal; that Plaintiff reported being stable overall; but, that Plaintiff reported shortness of breath and dizziness, as well as edema, at some but not all of his visits.  (*Id.*, pp. 17-18).

The ALJ specifically considered the medical source statement provided by Dr. Churchill. The ALJ noted that while most of Dr. Churchill's opinions were consistent with light work, parts of his opinion were inconsistent with his own treatment records.  (*Id.*, p. 18).  Particularly, Plaintiff's last treatment record from Dr. Churchill (prior to completion of the medical source statement) showed Plaintiff reported he had been stable overall and denied symptoms beyond right leg pain and swelling where his vein had been removed.  (*Id.*).  Plaintiff also reported he had been out of his medications for a week, and the only abnormal findings upon examination were elevated blood pressure and mild edema in Plaintiff's right leg.  (*Id.*).  The ALJ found Dr. Churchill's opinion was more limiting than the objective medical evidence of record would

8

support, and he incorporated the limitations set forth only to the extent that Dr. Churchill's opinion was consistent with the medical evidence of record and the claimant's testimony. For example, while Dr. Churchill marked that Plaintiff would need to be able to sit or stand at will, he did not indicate this or any other functional limitation in his treatment notes. (*Id*., pp. 253-291, 300-334). While Dr. Churchill was a treating physician, the ALJ did not err in giving his opinion less weight based upon inconsistencies between Dr. Churchill's opinion and Plaintiff's treatment record, particularly where Dr. Churchill simply checked a box and provided no further rational for the limitations asserted. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (conclusory checkbox form has little evidential value when it cites no medical evidence and provides little or no elaboration).

The ALJ's RFC determination is supported by substantial evidence.

### B. Vocational Expert Testimony

"The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). The ALJ's hypothetical question included all the limitations found to exist by the ALJ and set forth in the ALJ's RFC determination. Based on our previous conclusion that the ALJ's RFC findings are supported by substantial evidence, we conclude that the hypothetical question was proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. *Id*., *see also Lacroix*, 465 F.3d at 889.

### IV. Conclusion

For the reasons and upon the authorities discussed above, it is recommended that the ALJ's decision be affirmed and the Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).**

**The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of January 2019.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE